Mr. Rodriguez appeals the District Court's denial of his motion for reduction of sentence under Section 3582. Mr. Rodriguez was originally sentenced in 2003, and his base offense level at that time of 38 was determined by the quantity of crack cocaine that he distributed. Since that time, there have been two amendments, the Fair Sentencing Act, which reduced the disparity between crack and powder cocaine, and then also the Drugs Minus Two Amendment, which lowered the drug levels further, which brought Mr. Rodriguez's base offense level down to 32, a reduction of six offense levels. You know, since the time is short here, do you mind if I jump ahead a bit? Absolutely, Your Honor, please. I want to talk to you about the whole issue of disparity and how the district judge treated the reduction motions from Mr. Rodriguez as opposed to the other folks. And the primary person that you talk about is somebody by the name of Panameno or something like that? Yes, Your Honor. So, it looks like to me that there was a whole series of 3582 motions that Mr. Rodriguez filed, and one of the earlier ones, in 2014, the district judge dealt with the disparity issue vis-a-vis Mr. Panameno and basically explained why he wasn't treating Mr. Rodriguez the same way as Mr. Panameno. Recognizing that he doesn't specifically say that again in the exact order that's under appeal, there's at least a reference to it because he says you're just trying to re-litigate that. Isn't what he said earlier about the difference or the differential treatment issue on Panameno, doesn't that pretty much deal with that issue for that particular comparator? Well, I think when he's saying he's trying to re-litigate the disparities or the differences between the defendants, in fact, it was exactly the opposite. He was trying to effectuate the disparity. No, the point is, though, your argument is largely that the district judge didn't deal with certain issues. But he did, at least in 2014, with regard to Mr. Panameno, didn't he? Well, our argument is, that's one of our arguments. We also argued the district court didn't deal with, made erroneous findings, and also that he unreasonably weighed. So there are, it's not just that he didn't address all of this. So if I can ask you about the other comparators. Absolutely. So can you just, in a nutshell, kind of explain where you think Mr. Rodriguez fit in vis-a-vis the other people he's trying to compare himself with? Well, I think Mr. Rodriguez was analogous to Mr. Panameno. As the prosecutor said at sentencing, the only difference was that he was in the higher criminal history category. And if you look at the record, the character of the... Talk about the other ones. I'm sorry. I'm asking you to talk about the other ones. Okay. The other defendants, I think, were lower, started out lower than Mr. Rodriguez. They were all middle management, I think, but they were in a lower category. And so, but we're arguing that he should get the same benefits that they got, which is the benefit of the drug reduction. So you're kind of arguing sort of for a proportionality rule, everybody ought to be reduced by more or less the same proportion? By the reduction in their sentencing guideline range. Everyone had a reduction in the sentencing guideline range. But you know, I mean, the way these things work is that for some, you know, when you for others. And it kind of sounds like to me what was going on here is that the district judge didn't think the guideline range was as significant for Mr. Rodriguez as he did maybe for these other folks. Well, I don't think the record bears that out, Your Honor, because he originally got a low-end guideline sentence, as did the other defendants. And I think it's more a question of timing. The FSA, or the crack cocaine amendments, came down in 2008. And if you look in 2008, there's a flurry of motions. Every other defendant, without any problem, got, they were either stipulated to or the government agreed to it. And the court said, with the government's agreement, I'm going to go along with it. So Mr. Rodriguez, sadly, was left out of this original flurry. His motion wasn't filed until 2013. So I think that it was more a question of timing than he was differently treated. Because he was the same, everybody got a low-end guideline sentence at the beginning. Everyone was tied to the guideline range. When the guideline range was reduced, everyone else, without any question, got the reduction. Mr. Rodriguez seems to have been left out of that. And I think it was largely a question of timing, because he filed his so late. And there wasn't any mention in his pleadings of the fact that everyone else had gotten the reduction. So I think that it wasn't really that the court... You're saying maybe the district judge didn't realize he had reduced everybody else by... I think it wasn't focused on. And I think that there's nothing distinctive about him in that respect. He got a low-end sentence, just like everyone else got a low-end sentence. The prosecutor at the time said it would have been fair for him to have gotten an even lower sentence, because there were murdering and hitting factors. But we're not talking about what the prosecutor thought. We're talking about what the judge thought, right? So the court focused on his involvement in violent crimes, the conspiracy to murder a lot of the time. And the court didn't consider that. And I think it's a great question. Why wasn't the district court privileged to review that and consider that in determining what the sentence would be? First of all, let me address the count 13, I think it was, with respect to the conspiracy to murder. That involved just a telephone call. That was the only involvement that he was alleged to have had in it. There were three other counts of conspiracy to murder that were alleged against another co-defendant, Pineda. And those were dismissed as part of Pineda's plea bargain. And one of our arguments here is that Mr. Rodriguez had an attorney who, on the eve of trial, pled him guilty to everything without any negotiation. So presumably if Pineda had been able to drop three conspiracy to murder counts as part of his plea bargain, Mr. Rodriguez similarly would have been able to reduce that as part of his plea bargain. And it was one telephone call that never went anywhere. So I would argue that that's not justification for a seven-year increase in sentence with respect to the conspiracy to murder count. With respect to his prior, I think there were mitigating factors. Clearly he deserved to be penalized for it. He served time for it. It was part of his criminal history. It enhanced his sentence. But it doesn't mean that once he's in an elevated sentencing level because of that prior conviction, that precludes him from consideration for prior reductions. When the Congress and the Sentencing Commission determined that the drug guidelines levels were excessively high and everyone else got the benefit of that, there was no reason for leaving Mr. Rodriguez out of that. Unless there are any further questions, I'll reserve the remainder of my time for it. All right. We'll hear from the government. Good morning, Your Honors. Bruce Reardon on behalf of the United States. Given the questions I can address directly on the disparity and the telephone call issue, if that's okay. I was one of the original prosecutors in this case. Most of the matters, with the exception of a certain amount of time that I was in a different role in the office, I still knew what was happening in these cases. The disparity issue, I would write the district court. It's not even a question. I believe the record will show this court of abuse of discretion for, starting with Mr. Panameno, as the court pointed out, in 2014. That's the Panameno. Roughly, Eduardo Panameno, roughly comparable. Mr. Panameno had a supervising role on certain sections of the gang's territory. Mr. Reardon, this is significant also in the telephone call, if I may, Your Honor. Rodriguez supervised, at the time, what was known as a landfill that actually the Chamber of Congress occupies at 3rd and Big City, west of downtown. Southern end of the territory. They both reported to Mr. Romero. Differences came. Prior to Count 13, the criminal conspiracy to murder Alberto Pina, a member of the gang who had been in jail, while in jail, hatched a plot with other members to take out Mr. Romero and get his street back, and his street, or his area, was the cemetery. He had a direct conflict with Mr. Rodriguez. That leads to, that's some disparity with Mr. Panameno. Battle came down, as it were. He stayed out of it, presumably to keep his street. Mr. Rodriguez, and this is the phone call, among other evidence, it's some phone call, Mr. Rodriguez agreed, in wiretap call, with Mr. Romero, his boss, to conspire to murder Pina, to lure Pina to a club on Sunset Hill, and that murder never took place, or even attempted murder, because the FBI flooded the streets. So that's with respect to Panameno. And Panameno had no criminal history. Then for Lopez, Pineda, and Hernandez, all three of those defendants are what we referred to throughout the case as the Count 3 defendants. They were narcotics dealers. Pineda, Lopez, and Hernandez. Not directly involved in violence, is that the point? Correct. They were narcotics dealers. Is there some place in all of the rulings and all of this where we see the district judge actually dealing with the disparity argument for those two? Not really, Your Honor. With respect to Lopez, Pineda, and Hernandez, there's no specific... Okay. The record was excellently compiled by opposing counsel, and there's nowhere in the record where that was specifically addressed. But even by myself, with respect to putting something in the record, in reflection, of course, this was all... At that time, we didn't know about Amendment 782 and whatnot. Yeah, right. And then as time passed, and these amendments did come down, it wasn't anything to do with oversight or flurry. It was an analysis, which I contributed to, although most importantly the court made, of course, that Lopez, Pineda, Hernandez, and even Panameno were both eligible and entitled to a sentencing reduction. I think that's the core of having handled the number of these sentencing reductions. And Judge Liu did a repeatedly, very detailed effort to get all of his thoughts and findings on the record in four separate occasions. Although Mr., and that's focusing on Mr. Rodriguez, is eligible, and he is eligible for the reduction, he's not entitled or he is disentitled to this reduction, which is largely designed for nonviolent offenses involving drug trafficking. Because as the Count 13 conviction, as well as the prior conviction for voluntary manslaughter, he and his brother with Mr. Rodriguez pulling the trigger, killing a rival. So on the question of the argument that the district judge didn't deal with the claim of disparate treatment vis-a-vis, not Panameno, but the others, are we supposed to say, we assume the judge knew all of this stuff and just dealt with it silently, or are we to say that it doesn't matter, didn't have to, or is it something else? I think it could be a combination of the factors, if I may, Your Honor, because the factor number six, the disparity, the unwarranted disparity factor, which if I remember correctly is unwarranted for defendant as well as criminal record. Right. Because the criminal record is so different, and Lopez, Pineda, and Hernandez all have no violent crime in their past. They are, although they were, local drug dealers in the McCarthy Park. This court can presume that the district court, with the substantial, as this court has reported, superior position of knowledge in this case, and certainly that's the case of the district court, start to the finish and everything in between, that the court was able to make that analysis, and that was, and the court came back, you always think you could say that, back at the 2003 sentencing, thinking of comparing Panameno to Rodriguez, largely because they were the RICO defendants, the 10 or 12 RICO defendants, and the course of the case, Your Honor, at the time of sentencing Lopez, the original sentencing, and then later reflected at the recommendations of the district court, which the district court followed, although the district court, as you've seen in this case, did not always follow the government, always came to his own, that account three or the drug dealers in this conspiracy were the minor players. They're a different group, basically. They danced to the gang's tune. Let me ask you about another aspect of this. So the defense says that the judge made an error in saying that, well, the revised, under the revised guidelines, the sentence was not a substantial, quote, unquote, variance or departure, I guess. Variance would be the word. And I just have a little bit of a hard time seeing how four, we're talking about 47 months, basically four years, how that could not be called substantial. Can you help? Maybe that doesn't matter either. I'm not sure where it fits in, so can you help me out a little bit there? Yes, Your Honor. I looked it myself and thought about the very use of the word that the court used, not a substantial departure. I thought about whether the court meant to say variance or departure as well. And I believe it's this, Your Honor. What the court was doing, very wisely, and as I've learned from it, what the court was looking at was this. Resentencing is a sentence. If this had been a new sentence, that would be a new sentence. Departure and variance, of course, comes immediately into play. What the court was saying was, I've sentenced him to 230. That's what I think the record reflects. I've already sentenced him to this. Good judgment reasons, courts for judgment. Looking at the record again, I hold to those reasons. Again, it's not a substantial. I believe from the record that when the district court is using the word departure, it's referring really to gap. Count four factor, 3553A. Count four is the RICO? Or the murder? It's the murder. Factor four. Factor four, okay. Factor four has always been a little hard to articulate. 553E, factor four. Is the sentence warranted within the guidelines? And I think that it's fair to say that what the court looks at the factors. Factor one weighs heavily against Mr. Rodriguez. Factor two weighs heavily against him. Factor three is a push. It's not involved here. Factor four, digging deeply into the record, as I said, which is expertly prepared, and from my recollection of the experience, the court is saying, I'm looking at the guidelines too. I'm looking at the 151 to 180 as I must. And it's not warranted to make a reduction. And the sentence I'm giving with all the facts and circumstances considered, including the violent count 13, the violent past, is not a substantial. The court did use the word departure. The lingo doesn't make as much of a difference to me as the word substantial, I think. The four years from the high end of 188 to 235, four plus years, 47 months, something like that, is longer. Substantial is, I guess, in the eye of the beholder. But the court from the beginning, and from the 2003 sentencing, moving forward through the four hearings, the district court relied heavily on that violent criminal past, the voluntary manslaughter, and the conspiracy to kill Mr. Pena. And the court's view, that four-year gap for that criminal behavior is not substantial. So your view is that I think opposing counsel refers to that as an erroneous fact-finding, and you're saying it's an opinion or a view. Is that right? Yes. I definitely do not believe the court, nor do I believe more importantly that the record reflects that the court committed an error in using that word, either of the words substantial, departure, or the two words together. That is a fair judgment, a judgment that the appellant does not share, and even perhaps, as the cases repeatedly say, Paul and Hardy, perhaps other judges would view differently, but this judge, who had the grounded knowledge of the case, viewed that as not substantial, and that is not, in my view, and I think more importantly, the record will reflect that that's not error. Okay. Thank you. I have nothing to add unless the court has additional questions. Thank you very much. Do you have some time for rebuttal? Briefly, I know Mr. Reardon focused on the two violent aspects of Mr. Rodriguez's sentence. One was his prior, the other was the conspiracy to murder charge, and I just wanted to point out for one thing, the conspiracy to murder charge bore a guideline range of 28, so it was much lower than the drug charge guideline. Also, we're not arguing that Mr. Rodriguez should receive a lower sentence than Mr. Panameno. We understand that there were disparities at the original sentencing based upon the criminal history and the offense levels, and those disparities, we believe, should be effectuated by the fact that the sentencing commission in Congress has substantially reduced the drug guidelines, which are what drove Mr. Rodriguez's sentence, and although all the other defendants received the concomitant benefit, Mr. Rodriguez did not, and that's what we contend is unreasonable. This thing about the not substantial increase over the high end, I have a hard time figuring out exactly how that fits into your argument. In other words, let's say you and I were to agree that four years is substantial. I guess without being flip about it, the question is so what in terms of this case? How does it fit in? Well, I think it's seven years, Your Honor. I'm talking about from the high end, though, because I think that's what the judge was talking about. Well, from the low end of one to the low end of the other is about seven years, and it's just I think he kept on repeating, as Mr. Rodriguez's sentence got reduced and reduced and reduced by operation of these guidelines, he just kept on saying it's not substantial. I don't think he was really focusing on the fact that seven years is huge. It's huge in someone's mind. My question, though, is let's say it was. So how does that entitle you, if that's all there is, let's just assume for purposes of discussion that's all there is, how does that entitle Mr. Rodriguez to some sort of a different result, that one thing? I think it's an erroneous fact by the district courts. We're starting to say assessment, and that's probably closer than a fact finding. It's hard to argue. It could be an opinion. It could be a fact. But I think it's an erroneous foundation. So if it's an erroneous assessment, in other words, if different judges would disagree over whether four years or seven years is a substantial increase, and let's just say that's an opinion or an assessment or a view, and that's the only thing that's wrong, that wouldn't entitle you to a new sentencing, right, just the fact that the judge thinks seven years isn't as much time as you might think or as I might think? Well, I would respectfully disagree. I mean, I think someone saying seven years in someone's life is not significant or not a departure. I think that's something that this court should take into consideration as being unreasonable. Okay. Thanks. We thank both sides for their arguments. And the case of United States v. Rodriguez is submitted.
judges: Tashima, Ikuta, Kennelly